# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EZRA K. WILLIAMS, CDCR #AF-1812,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>WILLIAM NEWMAN; D. GALLEGOS; WARREN MONTGOMERY<br><br>　　　　　　　Defendants. | Case No. 23-cv-00136-BAS-MDD<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2];**<br><br>**(2) DENYING MOTION TO APPOINT COUNSEL [ECF No. 3];**<br><br>**(3) DISMISSING DEFENDANT WARREN MONTGOMERY FOR FAILING TO STATE A CLAIM UNDER 28 U.S.C. §§ 1915(e)(2) & 1915A; and**<br><br>**(4) GRANTING PLAINTIFF LEAVE TO AMEND** |

Plaintiff Ezra Williams ("Plaintiff" or "Williams"), an inmate currently incarcerated at the California Correctional Institute ("CCI") located in Tehachapi, California, commenced the instant civil rights lawsuit pursuant to 42 U.S.C. § 1983 on January 23, 2023. (Compl., ECF No. 1.) The action arises out of Williams' claim he was denied his constitutional rights when he previously was housed at Calipatria State Prison ("CAL") in February 2021. (*See generally id.*) Williams is proceeding *pro se*; he also applies for *in forma pauperis* ("IFP") status (IFP App., ECF No. 2) and requests appointment of counsel (Mot. to Appoint Counsel, ECF No. 3).

I.   **MOTION TO PROCEED IFP**

A party who institutes a civil action, suit, or proceeding in a district court of the United States, except for an application for a writ of habeas corpus, must pay a filing fee of $402.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).  However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in increments or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless of whether his action is ultimately dismissed, *see* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires a prisoner who seeks to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average

---

[1] In addition to the $350 statutory fee, civil litigants must pay an administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).  The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1), (b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the prisoner's account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

Under 28 U.S.C. § 1915, indigency is the benchmark for whether a plaintiff qualifies for IFP status. The determination of indigency falls within the district court's sound discretion. *Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991) (holding that "[s]ection 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement on indigency"), *rev'd on other grounds*, 506 U.S. 194 (1993). It is well-settled that a party need not be completely destitute to proceed IFP. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948). To satisfy the requirements of 28 U.S.C. § 1915(a), "an affidavit [of poverty] is sufficient which states that one cannot because of his poverty pay or give security for costs . . . and still be able to provide himself and the dependents with the necessities of life." *Id.* at 339. However, "the same even-handed care must be employed to assure that federal funds are not squandered to underwrite, at public expense . . . the remonstrances of a suitor who is financially able, in whole or in part, to pull his own oar." *Temple v. Ellerthorpe*, 586 F. Supp. 848, 850 (D.R.I. 1984).

In support of his IFP Application, Williams submits a copy of his Inmate Trust Account Statement. (*See* IFP App. at 5–6.) The statement shows Williams maintained an average monthly balance of $110.65 and had $96.84 in average monthly deposits credited to his account over the six month period immediately preceding the filing of his Complaint. His available balance as of December 20, 2020 was $58.56. (*Id.* at 4.) Williams has made a satisfactory showing of indigency for the purpose of 28 U.S.C. § 1915(a). Therefore, the Court **GRANTS** Plaintiff's IFP Application and directs the Secretary of the CDCR, or their designee, to collect this initial filing fee only if sufficient funds are available in Plaintiff's

account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered").

## II.   SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)

### A.   Standard of Review

Because Williams is a prisoner and is proceeding IFP, his Complaint requires a preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must review and *sua sponte* dismiss an IFP complaint, and any complaint filed by a prisoner seeking redress from a governmental entity, or officer or employee of a governmental entity, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure [("Rule")] 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed-me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### B.  Allegations in the Complaint

Williams' action arises out of his claim Defendants violated several of his constitutionally protected rights when he was incarcerated at CAL in February 2021.

For several years, Williams has been a "devout practitioner of the Asatru faith." (Compl. at p. 3.) He alleges that practice of this religion requires him to wear religious "headgear" and a talisman. (*Id.*) On approximately February 12, 2021, Williams was released from his cell so that he could go to the "pill line" to pick up his medication. (*Id.*) There, he was confronted by Defendant William Newman, a CAL Lieutenant ("Newman"). (*Id.*) Citing 15 Cal. Code Regs. § 3213 and CDCR's Religious Personal Property Matrix ("RPP Matrix"), Newman admonished Williams he could only wear his religious headgear while he confined in his cell, and demanded that Williams "remove his religious headgear," and. (*Id.*; *see* RPP Matrix (listing permissible religious personal property), Ex. 1 to Compl., ECF No. 1); 15 Cal. Code Regs. § 3213(e) ("The institution head or designee retains authority to remove or restrict use of an approved religious item . . ., based on a serious threat to facility security or the safety of inmates, and to the degree necessary to eliminate the threat."). But Williams refused. (Compl. at p. 3.) This purportedly prompted Newman to place Williams in handcuffs and physically remove Williams' religious headgear and talisman. (*Id.*) Williams threatened Newman that he would file a grievance, to which

Newman allegedly responded, "That wouldn't be a smart idea, you know where you're at." (*Id.*)  Williams asked Newman what he meant by that statement, to which Newman allegedly responded, "You're in prison, anything can happen." (*Id.* at p. 3–4.)

On approximately February 13, 2021, Williams filed a grievance against Newman pertaining to the events that had taken place the day prior.  (Compl. at p. 5.)  Williams alleges that the next day Defendant D. Gallegos, a Control Booth Officer, intentionally "closed [William's] electronic cell door on [William]'s skull as he set his breakfast tray out for collection."  (*Id.*)  As a result, Williams alleges he suffered from a loss of consciousness, a laceration above his right ear, severe head pain, blurred vision, dizziness, nausea, and "distorted equilibrium." (*Id.*)

Williams sought medical assistance for his injuries, but he alleges the responding CAL officers refused to get him medical attention, one of whom stated, "I'm not calling medical, you can walk or crawl, or take your ass back to your cell." (Compl. at p. 5.)  Other inmates helped escort Williams to the CAL medical unit, where Williams was "bandaged [and] his laceration glued shut." (*Id.*)  Williams was instructed to return to his cell but to "report to medical immediately if [his] condition worsen[ed]." (*Id.*)  Williams condition purportedly did worsen:  he "experienced a blinding headache, vomiting, nosebleed, and further loss of consciousness." (*Id.*)  Accordingly, he again sought medical attention from CAL officers located on the floor where his cell was located, but these officers again refused. (*Id.*)  They purportedly told Williams, "You're okay, tell them at pill call."  (*Id.* at pp. 5–6.)  Six hours later, Williams was unable to bring himself to the CAL medical unit under his own power, and was "immediately sent to [the] hospital for symptoms of head trauma." (*Id.* at p. 6.)

Williams alleges that as a result of the events that occurred in February 2021, he has experienced a "campaign of harassment." (Compl. at p. 6.)  He claims he has suffered several injuries for "filing civil rights grievances and grievances for staff misconduct which initiated an internal affairs investigation." (*Id.*)  He further claims that he was told by prison officials on several occasions that "we can make things very uncomfortable for you"

and "we can make your life hell" if he "insisted on pushing issues in CDCR." (*Id.* at p. 7.) Plaintiff seeks $200,000 in compensatory and punitive damages. (*Id.* at p. 10.)

### C.  42 U.S.C. § 1983

Williams brings the instant action under 42 U.S.C. § 1983 ("Section 1983). "Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### D.  Analysis

#### 1.  Claims Against Defendant Warren Montgomery

Williams lists as Defendants to this action Lieutenant Newman, Officer Gallegos, and Warden Warren Montgomery. (*See* Compl. at p. 1.) The Complaint does not, however, contain any specific factual allegations relating to Montgomery, nor does the Complaint allege any specific constitutional violation attributable to him. The absence of any such allegations fells whatever constitutional claim Williams intends to press against Montgomery in his Complaint. To state a claim, Williams must link each defendant, individually, to an alleged constitutional violation. *See generally*, Fed. R. Civ. P. 8(a).

Moreover, to the extent that Williams may be attempting to sue Montgomery under a theory of supervisory liability arising out of Montgomery's position as CAL's warden, he has not alleged facts to support such a claim. Supervisory personnel are generally not liable under Section 1983 for the actions of their employees. *See Iqbal*, 556 U.S. at 676. When a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607

- 7 -

23cv0136

F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To do so, a plaintiff must allege facts indicating that the supervisory defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Because Williams has failed to allege facts supporting any of these theories of supervisory liability as to Montgomery, the claims alleged against Montgomery in the Complaint do not withstand this Court's pre-answer screen. *See Iqbal*, 556 U.S. at 678; 28 U.S.C. § 1915(e)(2)(B)(ii); *Watison*, 668 F.3d at 1112.

Accordingly, this action is **DISMISSED WITHOUT PREJUDICE** as to Defendant Warren Montgomery.

### 2. Claims Arising Out of Failure to Provide Medical Attention

As stated above, in a Section 1983 lawsuit, a plaintiff must allege an "affirmative link between the occurrence" of the constitutional violations alleged in the pleading and the prison officials who are purportedly responsible for those deprivations. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976). At minimum, this mandate requires that a plaintiff identify and name as defendants the prison officials involved. *Cf. De La Rosa v. Arpaio*, 2015 WL 3795895, at *3 (D. Ariz. June 18, 2015) ("Plaintiff must identify and name as defendants the individuals responsible for violating his constitutional rights.").

Williams appears to invoke either an Eighth Amendment excessive force claim or, more likely, an Eighth Amendment failure to provide adequate medical care, where he alleges CAL "officers on the floor" twice refused to get Williams medical attention for his injuries inflicted by Gallegos. Because Williams does not identify the CAL "officers on the floor," either by name or as "Doe" defendants, these allegations do not give rise to Section 1983 liability. *Cf. Kimes v. Cal. Dep't of Corrs. & Rehabilitation*, No. 21cv1873-BTM (BLM), 2021 WL 5882605, at *4 (S.D. Cal. Dec. 13, 2021) (finding complaint that

did not identify any particular defendant but instead referred to purported wrongdoers collectively as staff did not pass muster of § 1915(e)(2)'s standard). If Williams wishes to pursue this variant of his Eight Amendment claim, he must identify by name or as a "Doe" defendant the "officers on the floor" who allegedly failed to respond appropriately to his medical emergency. *But see Estate of Escobar v. United States*, No. 20-cv-2454-L-KSC, 2022 WL 3209380, at *5 (S.D. Cal. Aug. 5, 2022) (opining "the use of Doe defendants is not favored in federal court" and that to employ the practice properly the allegations must "sufficiently put each Doe Defendant on notice of the [claims] against him or her").

### 3. Remaining Claims Against Remaining Defendants

As to the remaining Defendants, the Court finds the Complaint contains adequate facts to support the elements of cognizable First Amendment free exercise claims and Eighth Amendment excessive force claims, and that those claims are sufficiently robust to survive the "low threshold" set for *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b); *see Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

<u>First Amendment Free Exercise Claim</u>: To state a First Amendment free exercise claim, a plaintiff-inmate must allege a prison official's actions: (1) "substantially burden[ed]" the plaintiff's exercise of a sincerely-held religious belief; and (2) were not "rationally related to legitimate penological interests," *i.e.*, the official's actions unreasonably infringed upon the plaintiff's religious rights. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348–50 (1987). "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031–33 (9th Cir. 2015).

Here, Williams alleges he is an ardent practitioner of the Asatru faith, and that his religion requires him to wear certain "headgear" and a talisman. Williams alleges Defendant Newman forced him to remove his headgear and Talisman, and admonished him the only place he could wear these religious items is in his cell. Newman's asserted

basis for doing so rested, in part, upon a California regulation that confers CAL officials authority to remove approved religious items "based on a serious threat to facility security or to the safety of inmates and staff." 15 Cal. Code Regs. § 3213. But Williams alleges he was simply standing in line to receive his medications at the time he was confronted by Newman. Simply put, the facts alleged in the Complaint appear to be incongruent with the circumstances under which Newman would be empowered to invoke his regulatory authority to strip Williams of his religious garments. At the pre-answer screening stage, these allegations suffice to state a First Amendment free exercise claim.

Eighth Amendment Excessive Force Claims: To survive a pre-answer screen pursuant to 28 U.S.C. § 1915, a plaintiff seeking to press an Eighth Amendment excessive force claim must allege "the unnecessary and wanton infliction of pain[.]" *Whitley v. Abers*, 475 U.S. 312, 320 (1986). This requires alleging "overt acts with some degree of particularity such that his claim is set forth clearly enough to give defendants fair notice of the type of claim being pursued." *Ortexz v. Wash. Cnty*, 88 F.3d 804, 810 (9th Cir. 1996) (citing *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984)). "A prison official may be liable for failure to protect an inmate from a use of excessive force if he is deliberately indifferent to a substantial risk of serious harm to an inmate." *Estate of Davis v. Delo*, 115 F.3d 1388, 1395 (8th Cir. 1997); *see also Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000).

Williams alleges that while his head was protruding from his cell, Gallegos intentionally shut his cell door, injuring Williams. Since then, Williams alleges he has suffered from amnesia, blinding headaches, tinnitus, vision impairment, and neck pain. Hence, Williams' Complaint contains enough factual allegations to support the elements of an Eighth Amendment excessive force claim at this juncture.

*    *    *    *

While the Court finds Williams' allegations are sufficient to survive the pre-answer screening standard, he is cautioned that "the *sua sponte* screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a

defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

### III. MOTION TO APPOINT COUNSEL

Williams also requests the appointment of counsel in this case on the ground (1) he has been moved to different institutions by the CDCR and (2) there are "complex issues" in this matter. (Mot. to Appoint Counsel at 2.)

There is no constitutional right to counsel in a civil case. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009); *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 24 (19810. The decision to appoint counsel under 28 U.S.C. § 1915(e)(1) is within "the sound discretion of the trial court and is granted only in exception circumstances." *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (noting that only "exceptional circumstances" support such a discretionary appointment). Such exceptional circumstances exist where there is cumulative showing of both a likelihood of success on the merits and an inability of the *pro se* litigant to articulate his claims given their legal complexity. *See Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015); *Palmer*, 560 F.3d at 970.

Here, nothing in Williams' Complaint suggests he is incapable of articulating the factual basis for his First and Eighth Amendment claims, which appear "relatively straightforward." *Harrington*, 785 F.3d at 1309. In fact, the Court has found, based on its initial screening of the Complaint under 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), that he has stated a plausible claim for relief. *See Meeks v. Nunez*, No. 3:13-cv-00973-GPC-GBS, 2017 WL 476425, at *3 (denying ADA inmate appointment of counsel where inmate "successfully survived screening," and had submitted motions "drafted with clarity and [asserting] proper arguments"); *Garcia v. Blahnik*, No. 3:14-cv-00875-LAB-BGS, 2016 WL 4269561, at *3 (S.D. Cal. Aug. 15, 2016) (finding no "exceptional circumstances warranting a judicial request for a voluntary legal counsel" where Plaintiff's psychiatric disorder and limited access to the law library did not "prevent[] him from filing a well-articulated complaint and other motions with the Court").

In addition, while Williams may have sufficiently pleaded plausible First and Eighth Amendment claims at this preliminary stage of the proceedings, he has yet to demonstrate—and it is too soon to tell—whether he is likely to succeed on the merits. *Harrington*, 785 F.3d at 1309; *Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014) (affirming denial of counsel where prisoner could articulate his claims in light of the complexity of the issues involved, but did not show likelihood of succeed on the merits); *see also Dickey v. Strayhorn*, No. 3:17-cv-00546-JLS-JLB, 2017 WL 3118797, at *1 (S.D. Cal. July 21, 2017), *reconsideration denied*, 2017 WL 4271975 at *1 (S.D. Cal. Sept. 26, 2017) ("To demonstrate that he has a likelihood of success at trial, Plaintiff must do more than merely allege that one of his constitutional rights was violated. He must provide evidence to the effect that he has a likelihood of success on the merits of his allegations."); *Torbert v. Gore*, No. 3:14-cv-02991-BEN-NLS, 2016 WL 1399230, at *1 (S.D. Cal. Apr. 8, 2016) ("A plaintiff that provides no evidence of his likelihood of success at trial fails to satisfy the first factor of the [exceptional circumstances] test.").

Accordingly, the Court finds no "exceptional circumstances" exist at this preliminary stage of the case and **DENIES** Plaintiff's Motion to Appoint Counsel (ECF No. 3) without prejudice.

## IV.  CONCLUSION

Based on the foregoing, the Court:

(1)  **GRANTS** Plaintiff's application to proceed IFP pursuant to 28 U.S.C.§ 1915(a). (ECF No. 2.)

(2)  **ORDERS** the Secretary of the CDCR, or their designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $ 10 in accordance with 28 U.S.C. § 1915(b)(2).  ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

(3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, by U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

(4) **DISMISSES WITHOUT PREJUDICE** all of Plaintiff's claims against Defendant Montgomery for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

(5) **DISMISSES WITHOUT PREJUDICE** Plaintiff's Eighth Amendment claim premised upon the allegation he was denied adequate medical care at CAL.

(6) **GRANTS** Plaintiff leave to either: (1) file a Notice of Intent to proceed with only his First and Eighth Amendment claims against Newman and Gallegos, respectively, or (2) file an Amended Complaint correcting all the deficiencies identified by the Court in this Order. Plaintiff must file either a Notice of Intent or an Amended Complaint **by no later than April 7, 2023**.

If Plaintiff files a Notice of Intent, this Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Newman and Gallegos, and will dismiss the remaining claims and Defendant. If Plaintiff chooses to file an amended pleading correcting the deficiencies outlined in this Order, his Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* Civ. L.R. 15.1; *Hal Roach Studios, Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended complaint supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

//
//
//
//
//

  Plaintiff's amended pleading must be titled "First Amended Complaint," contain S.D. Cal. Civil Case No. 23-cv0136-BAS-MDD in its caption, and comply both with Federal Rule of Civil Procedure 8 and Southern District of California Local Rule 8.2.a. In order to assist Plaintiff in complying with these requirements, the Court further **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983, for his use and convenience, should he choose to amend.

  (7) **DENIES** Plaintiff's motion to appoint counsel. (ECF No. 3.)

  **IT IS SO ORDERED.**

**DATED: March 8, 2023**

*[signature]*
Hon. Cynthia Bashant
United States District Judge