UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EZRA K. WILLIAMS, CDCR #AF-1812,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM NEWMAN; D. GALLEGOS; WARREN MONTGOMERY; JOHN DOE 1; JOHN DOE 2,<br><br>Defendants. | Case No.: 3:23-cv-0136-BAS-MDD<br><br>**ORDER DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF FIRST AMENDED COMPLAINT UPON DEFENDANTS NEWMAN AND GALLEGOS PURSUANT TO 28 U.S.C. § 1915(d) AND FED. R. CIV. P. 4(c)(3)** |

Plaintiff Ezra Williams ("Plaintiff" or "Williams"), an inmate proceeding *pro* se and currently incarcerated at the California Correctional Institute ("CCI") located in Tehachapi, California, commenced the instant civil rights lawsuit pursuant to 42 U.S.C. § 1983 on January 23, 2023. (Compl., ECF No. 1.) The action arises out of Williams' claim he was denied his constitutional rights when he previously was housed at Calipatria State Prison ("CAL") in February 2021. (*See generally id.*)

- 1 -

23cv0136

On March 8, 2023, the Court granted Williams' request to proceed *in forma pauperis* and conducted the required *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). (Initial Screening Order ("Order"), ECF No. 4.) The Court found that while Williams adequately stated a First Amendment free exercise claim and Eighth Amendment excessive force claim against Defendants Newman and Gallegos, he failed to state a claim as to Defendant Montgomery. (*See id.* at 7–10.) In addition, the Court found that Williams' Eighth Amendment deliberate indifference claim regarding CAL prison officials' alleged failure to provide him with adequate medical attention could not proceed because he did not even attempt to identify the individuals purportedly responsible for this alleged violation. (*See id.* at 8.)

The Court gave Williams the options either to file (1) a notice of intent to proceed as to his First and Eighth Amendment claims against Defendants Newman and Gallegos or (2) an amended pleading to correct the deficiencies of pleading identified in the Court's Order. (*See* Order at 13.) Plaintiff chose the second option when he filed his First Amended Complaint. (First Am. Compl. ("FAC"), ECF No. 5.) Because Williams is a prisoner and is proceeding IFP, the Court again must conduct a pre-answer screening of Williams' new pleading. *See Chavez v. Robinson*, 81 F.3d 1162, 1168 (9th Cir. 2006).

## I.  LEGAL STANDARDS

### A.  Screening Pursuant to 28 U.S.C. § 1915A and § 1915(e)(2)(B)

Sections 1915A and 1915(e)(2)(B) require this Court to review and *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d

680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure [("Rule")] 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the contest of failure to state a claim under [Rule] 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The "mere possibility of misconduct" or unadorned, "the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.* at 678–79.

### B.   42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 40 U.S. 386 U.S. 386, 393–94 (1989) (internal quotation marks omitted). "To establish [Section] 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

//

## II.  ANALYSIS

### A.  The First Amended Complaint's Allegations

Williams' action arises out of his claim Defendants violated several of his constitutionally protected rights when he was incarcerated at CAL in February 2021. (*See generally* FAC.)

For several years, Williams has been a "devout practitioner of the Asatru faith." (FAC at 3.) He alleges that practice of this religion requires him to wear religious "headgear" and a talisman. (*Id.*) On approximately February 12, 2021, Williams was released from his cell so that he could go to the "pill line" to pick up his medication. (*Id.*) Williams was adorned in those religious items. (*Id.*) At the pill line, Williams was confronted by Defendant William Newman, a CAL Lieutenant ("Newman"). (*Id.*) Citing 15 Cal. Code Regs. § 3213 and CDCR's Religious Personal Property Matrix ("RPP Matrix"), Newman admonished Williams he only could wear his religious headgear while confined in his cell. (*Id.*; *see* RPP Matrix (listing permissible religious personal property), Ex. 1 to Compl., ECF No. 1); 15 Cal. Code Regs. § 3213(e) ("The institution head or designee retains authority to remove or restrict use of an approved religious item . . ., based on a serious threat to facility security or the safety of inmates, and to the degree necessary to eliminate the threat."). Newman demanded Williams to "remove his religious headgear," but Williams refused. (FAC at 3.)

Williams' refusal purportedly prompted Newman to place Williams in handcuffs and physically remove Williams' religious headgear and talisman. (FAC at 3.) Williams threatened Newman that he would file a grievance, to which Newman allegedly responded, "That wouldn't be a smart idea, you know where you're at." (*Id.*) Williams asked Newman what he meant by that statement, to which Newman allegedly responded, "You're in prison, anything can happen." (*Id.* at 3–4.)

On approximately February 13, 2021, Williams filed a grievance against Newman pertaining to the events that had taken place the day prior. (FAC at 5.) Williams

- 4 -

23cv0136

alleges that the next day Defendant D. Gallegos, a Control Booth Officer, intentionally "closed [Williams'] electronic cell door on [Williams'] skull as he set his breakfast tray out for collection." (*Id*.) As a result, Williams alleges he suffered from a loss of consciousness, a laceration above his right ear, severe head pain, blurred vision, dizziness, nausea, and "distorted equilibrium." (*Id*.)

Williams sought medical assistance for his injuries, but he alleges the responding CAL officers refused to get him medical attention, one of whom stated, "I'm not calling medical, you can walk or crawl, or take your ass back to your cell." (FAC at 5.) Other inmates helped escort Williams to the CAL medical unit, where Williams was "bandaged [and] his laceration glued shut." (*Id*.) Williams was instructed to return to his cell but to "report to medical immediately if [his] condition worsen[ed]." (*Id*.) Williams' condition purportedly did worsen: he "experienced a blinding headache, vomiting, nosebleed, and further loss of consciousness." (*Id*.) Accordingly, he again sought medical attention from CAL officers located on the floor where his cell was located, but these officers again refused. (*Id*.) They purportedly told Williams, "You're okay, tell them at pill call." (*Id*. at 5–6.) Six hours later, Williams was unable to bring himself to the CAL medical unit and was "immediately sent to [the] hospital for symptoms of head trauma." (*Id*. at 6.)

Williams alleges that as a result of the events that occurred in February 2021, he has experienced a "campaign of harassment." (FAC at 6.) He claims he has suffered several injuries for "filing civil rights grievances and grievances for staff misconduct which initiated an internal affairs investigation." (*Id*.) He further claims he was told by prison officials on several occasions that "we can make things very uncomfortable for you" and "we can make your life hell" if he "insisted on pushing issues in CDCR." (*Id*. at 7.) Plaintiff seeks $200,000 in compensatory and punitive damages. (*Id.* at 10.)

//
//

### B. Claims Against Defendant Montgomery

In its Initial Screening Order, the Court dismissed all of Williams' claims against Defendant Montgomery for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). (*See* Order at 13.) The Court instructed Williams that, if he filed an amended complaint, "[d]efendants not named and any claims not re-alleged in the Amended Complaint will be considered waived." (*Id.* (citing See Civ. L.R. 15.1)); *see also Hal Roach Studios, Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended complaint supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

In the FAC, Williams no longer names Warden Montgomery as a Defendant. Accordingly, all claims against this Defendant are deemed waived and he remains dismissed from this action.

### C. Remaining claims

The First Amended Complaint contains four claims. Two of those claims—Williams' First Amendment free exercise claim against Newman and his Eighth Amendment excessive force claim against Gallegos—are supported by substantially the same facts alleged in Williams' initial Complaint. In its Initial Screening Order, this Court found these claims sufficiently pled. Accordingly, for precisely the same reasons enunciated in the Initial Screening Order, this Court finds the iteration of Williams' First Amendment free exercise claim and Eighth Amendment excessive force claim alleged in his First Amended Complaint survive the "low threshold" set for *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) in its Initial Screening Order. (*See* Order at 9–10.)

The First Amended Complaint also contains new allegations in support of Williams' Eighth Amendment deliberate indifference claim, and a new Fourteenth Amendment equal protection claim that is predicated upon the same facts as his First Amendment claim. For

the reasons set forth below, the Court also finds these claims survive 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

<u>Eighth Amendment Deliberate Indifference to Serious Medical Need Claim</u>:  To state an Eighth Amendment medical care claim, Williams must show a prison official's "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "Indifference 'may appear when prison officials deny, delay, or intentionally interfere with medical treatment.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

Williams' deliberate indifference claim in his initial Complaint failed because he did not even attempt to identify the CAL officials purportedly responsible for the violation. However, now Williams seeks to remediate that deficiency through "Doe" pleading. The First Amended Complaint alleges that after Gallegos injured Williams by closing the cell door on his head, Williams requested medical assistance from the floor officers, to whom he refers as "John Doe 1" and "John Doe 2." (FAC at 5.) But Correctional Officer Does refused to help. (*Id.*) Specifically, the First Amended Complaint states John Doe 1 purportedly told Williams, "I'm not calling medical, you can walk, or crawl, or take your ass back to your cell." (*Id.*) Other inmates later helped Williams go to the medical unit, but when he returned to his cell, he began to experience headaches, vomiting, nosebleed, and loss of consciousness. (*See id.* at 5–6.) Williams reported these issues to John Doe 1 and John Doe 2 who again "refused to call medical, stating, 'you're conscious and talking, you're okay, tell them at pill call.'" (*Id.* at 6.) Nearly six hours later, Williams was able to get to the medical unit where he was "immediately sent to the hospital for symptoms consistent with head trauma." (*Id.*)

The Court finds these allegations are sufficient to state an Eighth Amendment deliberate indifference to serious medical needs claim and that, for now, Williams has rectified the deficiency noted in this Court's Initial Screening Order by identifying John Doe 1 and John Doe 2 as the individuals responsible for this violation.

\* \* \* \*

Despite this Court's conclusion, Williams must first identify Correctional Officer Does 1 and 2 and substitute their true names in an amended pleading *before* the United States Marshall will be ordered (or able) to execute service upon them. *See Aviles v. Vill. Of Bedford Park*, 160 F.R.D. 565, 567 (N.D. Ill. 1995) ("John Doe defendants must be identified and served within [90] days of the commencement of the action against them."); *see also* Fed. R. Civ. P. 4(m) & 15(c)(1)(C); *id.* 10(a) (requiring a complaint to name the parties being sued). Generally speaking, Doe pleading is disfavored, including in the IFP context. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Doe pleading inhibits—and in most instances makes impossible—service by the United States Marshal upon defendant prison officials. *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (holding that in an IFP case the plaintiff is required to "furnish the information necessary to identify the defendant" to enable the United States Marshal to effect service); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, 2018 WL 3580764, at \*6 (D. Haw. July 25, 2018) ("As a practical matter, the United States Marshal cannot serve a summons and complaint on an anonymous defendant. The use of doe defendants is therefore disfavored in federal court."; citing Fed. R. Civ. P. 10(a)).

Ninth Circuit authority permits Williams the opportunity to pursue appropriate discovery to identify unknown Correctional Officer Does 1 and 2. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642). But Williams is warned that if it becomes clear that discovery will not disclose the identity of Does 1 and 2, his claim against them will be dismissed. *Id.*

<u>Fourteenth Amendment Equal Protection Claim</u>: In order to state a claim for violation of Williams' Fourteenth Amendment equal protection rights, he must "show that the defendants acted with intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (citation omitted.) "The Constitution's equal protection guarantee ensures that

prison officials cannot discriminate against particular religions." *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

Here, Williams alleges Newman "singled [him] out" when Newman confiscated his religious headgear pursuant to the RPP Matrix, despite the fact there are other inmate religious populations who are permitted to wear headgear n "many different colors, shades, tints, hues [and] patterns" outside of their cells. (FAC at 4.) The Court finds this allegation amounts to a sufficiently firm factual premise for Williams' Fourteenth Amendment equal protection claim. Accordingly, this claim, too, surpasses the "low" pre-answer screening threshold.

### III. CONCLUSION AND ORDER

Based on the foregoing, the Court:

1. **DIRECTS** the Clerk to issue summonses as to Plaintiff's FAC (ECF No. 5) upon Defendants WILLIAM NEWMAN and D. GALLEGOS, and forward them to Plaintiff along with a blank U.S. Marshal Forms 285. In addition, the Clerk will provide Plaintiff with certified copies of the March 8, 2023 Order (ECF No. 4), a certified copy his FAC (ECF No. 5), and the summonses so that he may serve the Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the Forms 285 as completely and accurately as possible, include an address where Defendants may be served, *see* S.D. Cal. Civ. L.R. 4.1.c, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

2. **ORDERS** the U.S. Marshal to serve a copy of the FAC and summons upon Defendants WILLIAM NEWMAN and D. GALLEGOS as directed by Plaintiff on the USM Forms 285 provided, and to file executed waivers of personal service upon Defendants WILLIAM NEWMAN and D. GALLEGOS with the Clerk of Court as soon as possible after their return. Should a Defendant fail to return the U.S. Marshal's request for waiver of personal service within 90 days, the U.S. Marshal shall instead file the

completed Form USM 285 Process Receipt and Return with the Clerk of Court, include the date the summons, FAC and request for waiver was mailed to that Defendant, and indicate why service upon the party remains unexecuted.  All costs of that service will be advanced by the United States; however, if a Defendant located within the United States fails, without good cause to sign and return the waiver requested by the Marshal on Plaintiff's behalf, the Court will impose upon the Defendant any expenses later incurred in making personal service.  *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

      3.     **ORDERS** Defendants, once they have been served, to reply to Plaintiff's FAC, and any subsequent pleading they may file in this matter in which they are named as parties, within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (stating that while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and thus, has made a preliminary determination based on the face on the pleading that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

//
//
//
//
//
//
//
//
//
//

    4.    **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. Civ. L.R. 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon the Defendants, may be disregarded.

**IT IS SO ORDERED.**

**DATED: June 12, 2023**

Hon. Cynthia Bashant
United States District Judge